MAIER–SCHULE GMC, INC., Plaintiff,

v.

GENERAL MOTORS CORPORATION (GMC TRUCK AND BUS GROUP), Volvo White Truck Corporation, Volvo GM Heavy Truck Corporation, Buffalo Truck Sales & Service, Inc., Thage Berggren, Kenneth Kaczmarek, Richard B. Gurley, Nicholas Bodnar, and Thomas B. Bowen, Defendants.

No. 87–CV–1514S.

United States District Court,
W.D. New York.

May 6, 1994.

F. James Kane, Jr., Damon & Morey, Buffalo, NY, for plaintiff.

Thomas S. Wiswall, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY and Daniel L. Goldberg, Bingham, Dana & Gould, Boston, MA, for General Motors Corp.

Deborah H. Karalunas and John J. Dee, Bond, Schoeneck & King, Syracuse, NY, for Volvo GM Heavy Truck Corp., Taige Berggren, Kenneth Kaczmarek and Richard B. Gurley.

Marilyn A. Hochfield, Kavinoky & Cook, Buffalo, NY, for Volvo White Truck Corp.

Thomas C. Pares, Renda, Pares & Pfalzgraf, Buffalo, NY, for Buffalo Truck Sales & Service, Inc. and Thomas Bowen.

Robert J. Lane, Sr., Buffalo, NY, for Nicholas Bodnar.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court are the motions of defendants General Motors Corporation ("GM"), Volvo White Truck Corporation ("White") and Volvo GM Heavy Truck Corporation ("VGM") for summary judgment pursuant to Fed.R.Civ.P. 56 on plaintiff's demands for injunctive and declaratory relief and punitive damages.

In support of their motions, defendants have submitted the following papers: a Notice of Motion by GM, incorporating GM's statement of undisputed facts submitted in connection with GM's motion for summary judgment filed on February 21, 1992 ("GM Facts"); a Memorandum of Defendant General Motors Corporation in Support of its Motion for Summary Judgment on Claims for Relief other than Compensatory Damages ("GM Memo"); a Reply of Defendant General Motors Corporation ("GM Reply"); a Notice of Motion for Summary Judgment by White, which incorporates the affidavits and memoranda filed by the other moving defendants; a Combined Affidavit of Marilyn A. Hochfield, Esq. and Statement of Undisputed Facts ("Hochfield Affid."); a Notice of Motion by VGM, with exhibits, including portions of a deposition of Nelson Schule ("Schule Dep."), portions of an affidavit of Elmo Sergo ("Sergo Affid."), portions of an affidavit of Jerry A. Gambino ("Gambino Affid."), and portions of an affidavit by Nelson Schule ("Schule Affid."); and a Memorandum of Law in Support of Defendant Volvo GM's Motion for Summary Judgment ("VGM Memo").

In opposition to defendants' motions, plaintiff has submitted a Memorandum in Opposition to Summary Judgment ("P.Memo"), to which plaintiff has attached, among other things, a copy of its June 1, 1992 Statement in Response to General Motors' Claims of Undisputed Material Facts ("P. Facts"), which was submitted in opposition to defendants' prior summary judgment motions, and a copy of its July 23, 1993 Memorandum of Law in Opposition to Defendants' Motion to Enter Final Judgment and in Reply to Defendants' Opposition to Plaintiff's Request for Certification.

Upon consideration of all these submissions, and for the reasons discussed below, defendants' motions for summary judgment will be granted, and final judgment will be awarded to these defendants, as well as defendants Berggren, Kaczmarek, and Gurley, pursuant to Fed.R.Civ.P. 54(b).

### PROCEDURAL BACKGROUND

Plaintiff, Maier–Schule GMC, Inc., has filed a complaint alleging a number of federal and state statutory and state common law causes of action against defendants. Essentially, these causes of action arise from a

decision by defendant GM to cancel plaintiff's "heavy duty truck addendum", and the failure of defendant VGM to award plaintiff a new dealership franchise. This Court has federal question jurisdiction under 28 U.S.C. § 1331, and jurisdiction over plaintiff's state law claims under this Court's supplemental jurisdiction, 28 U.S.C. § 1367.

Plaintiff possessed a franchise to distribute GM trucks in Western New York and Northern Pennsylvania. Moreover, plaintiff alleges that it had rights under light, medium, and heavy duty truck "addenda", which permitted plaintiff to distribute these individual grades of trucks. Plaintiff alleges that each addendum constituted a separate and distinct "franchise", as that term is defined in the Automobile Dealers' Day in Court Act[1] and the New York State Franchised Motor Vehicle Act.[2] Plaintiff charges that when defendants GM and Volvo joined to create the joint venture VGM, they unlawfully conspired to terminate plaintiff's rights under the heavy duty addendum in bad faith, and to award a VGM franchise to a competing dealer, defendant Buffalo Truck Sales & Service, Inc. ("Buffalo Truck"). Furthermore, plaintiff seeks to hold defendants jointly responsible for certain actions taken by GM in connection with GM's cancellation of the heavy duty addendum, and its provision of discounts on the sales of heavy duty trucks. Plaintiff asserts claims under the following statutes and common law causes of action: (1) the New York Franchise Act; (2) the Dealers' Act; (3) New York State General Business Law § 197; breach of contract; Section 1 of the Sherman Act, 15 U.S.C. § 1; Section 2 of the Sherman Act, 15 U.S.C. § 2; Section 3 of the Clayton Act, 15 U.S.C. § 14; the Robinson–Patman Act, 15 U.S.C. § 13; New York State General Business Law § 340 (the "Donnelly Act"); the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; the New York State Uniform Commercial Code, N.Y.U.C.C. § 2–306(2); interference with contractual relations; and tortious interference with advantageous business relations.

On January 5, 1988, Hon. John T. Elfvin, United States District Judge for the Western District of New York, entered a Memorandum and Order denying plaintiff's motion for a preliminary injunction. Plaintiff had sought to enjoin defendant GM from cancelling the heavy duty addendum, and to enjoin defendants from entering into any agreement for the sale or service of GM trucks or parts in Western New York on terms and conditions more favorable than those available to plaintiff. Judge Elfvin determined that plaintiff had an adequate legal remedy available in the form of damages, and that the injunctive relief sought would impose undue hardships on defendants. Furthermore, Judge Elfvin determined that plaintiff had not demonstrated a likelihood of success on the merits of its case. Plaintiff did not appeal Judge Elfvin's Memorandum and Order.

On May 4, 1993 this Court entered a Decision and Order ("Decision") resolving the following motions: (1) the motions of defendants GM, VGM, and White for summary judgment pursuant to Fed.R.Civ.P. 56; (2) the motions of defendants Berggren, Kaczmarek, and Gurley (the "individual defendants") to dismiss plaintiff's complaint as against them for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); and (3) GM's objections to the Report and Recommendation of Hon. Edmund F. Maxwell, United States Magistrate Judge for the Western District of New York, recommending the denial of GM's motion for sanctions against plaintiff for failure to produce expert witness and damages information during discovery. Although this Court determined that certain of plaintiff's causes of action were sufficient to withstand defendants' motions for summary judgment, this Court further determined that plaintiff had failed to come forward with sufficient proof of its damages in response to defendants' summary judgment motions. This deficiency affected each of plaintiff's causes of action. There-

---

**1.** Also known as the Automobile Franchise Act, 15 U.S.C. §§ 1221–1225. For convenience, this Act will be referred to hereinafter as the "Dealers' Act".

**2.** New York Vehicle and Traffic Law § 460 *et seq.*, referred to hereinafter as the "New York Franchise Act".

fore, this Court awarded summary judgment to the moving defendants on the issue of damages. Furthermore, this Court determined that plaintiff had repeatedly failed to adhere to the orders of this Court directing plaintiff fully and accurately to answer defendants' interrogatories seeking information on plaintiff's calculation of damages. Therefore, this Court precluded plaintiff from introducing evidence of alleged damages at trial, pursuant to Fed.R.Civ.P. 26 and 37, the Local Rules in this District, and this Court's calendar guidelines regarding discovery orders.[3]

On June 17, 1993 plaintiff filed a notice of appeal to the Second Circuit United States Court of Appeals. Plaintiff supposedly appealed "from so much of said Decision and Order that granted summary judgment to defendants on plaintiff's claim of damages and granted defendants' motion for sanctions, precluding plaintiff from introducing evidence of damages at trial, and otherwise granted relief to defendants, and from each and every interlocutory order entered in this action." In its pre-argument statement to the Court of Appeals, plaintiff contended that the Decision of this Court resulted in "practical finality." (GM Notice of Motion for Entry of Judgment, Exh. 4.)

Moreover, plaintiff filed a petition to the Second Circuit for a writ of mandamus requiring this Court to vacate its Decision. In its papers accompanying that petition, plaintiff asserted that the Decision of this Court "effectively ended this lawsuit in favor of respondent since petitioner can only proceed to trial with *no* possibility of recovery of the damages it has undeniably suffered. This is, in effect, a final ruling, terminating petitioner's action in every realistic sense." (GM Notice of Motion for Entry of Judgment,

Exh. 3) (emphasis in original.) In addition, during a status conference held before this Court, plaintiff's attorney described the effect of this Court's Decision as follows:

> Your Honor, where we are as far as the plaintiff is concerned is that the plaintiff's case has been completely destroyed. We have filed a Notice of Appeal with the Second Circuit Court of Appeals on the theory that this is a final order, since this case has been ultimately resolved in—adversely to the plaintiff.

(GM Notice of Motion for Entry of Judgment, Exh. 1.)

On June 17, 1993 Staff Counsel for the Court of Appeals sent plaintiff a Pre–Argument Conference Notice. A note on the Notice reads, "It appears that some of plaintiff's claims are still pending in the District Court. Absent certification, there is no appellate jurisdiction over a non-final decision, FRCP 54(b). The appeal must be withdrawn. . . . (There is no such thing as 'practical finality'.)." The appeal was subsequently withdrawn by plaintiff. On July 16, 1993 the Court of Appeals entered a Mandate denying plaintiff's petition for a writ of mandamus.

Meanwhile, on June 23, 1993, GM submitted a motion to stay proceedings related to a parallel lawsuit that plaintiff had pending in New York State Supreme Court, Erie County (Index No. 5898–93), in which plaintiff was asserting many of the same causes of action asserted in this federal lawsuit. Defendants White, VGM, Berggren, Kaczmarek, and Gurley joined in GM's motion for a stay. However, on September 16, 1993 New York State Supreme Court Justice Joseph D.

---

**3.** At page 5 of its Memorandum, plaintiff writes, "The adverse damage ruling is not based upon an absence of damages but upon plaintiff's supposed failure to provide admissible evidence of those damages in pre-trial discovery." (P. Memo, p. 5.) Such a statement severely distorts the rationale that this Court expressly relied upon in its Decision and Order of May 4, 1993, as further addressed in this Court's Decision and Order of March 15, 1994 and Order of April 1, 1994. Indeed, this Court precluded plaintiff from introducing evidence of damages at trial, because the papers submitted to this Court indicated that plaintiff had failed to answer defen-

dants' interrogatories seeking information on plaintiff's calculation of damages. However, this Court's decision to grant defendants' motions for summary judgment on the issue of damages was wholly the result of plaintiff's failure to respond to defendants' properly supported summary judgment motions with proof of its alleged damages. Plaintiff could have provided to defendants during discovery every single financial document it ever generated, and this still would not have been sufficient to avoid summary judgment because plaintiff failed to submit sufficient information *to this Court* in opposition to defendants' motions.

Mintz entered an Order and Judgment dismissing plaintiff's state court action.

On June 2, 1993 plaintiff filed a motion pursuant to 28 U.S.C. § 1292(b) to certify this Court's Decision for appeal, to the extent that the Decision awarded defendants summary judgment on the issue of damages and precluded plaintiff from introducing evidence of damages at trial.

On June 23, 1993 defendant GM filed a motion for entry of judgment pursuant to Fed.R.Civ.P. 58. In the alternative, GM moved for entry of judgment on any individual claims that this Court found were finally resolved by its Decision. On June 25, 1993 defendant White joined in GM's motion and opposition to plaintiff's motion for certification. On June 30, 1993 defendants VGM, Berggren, Kaczmarek, and Gurley joined in GM's motion and opposition to plaintiff's motion for certification.

During oral argument on February 2, 1994, counsel for the moving defendants advised this Court that they consented to withdrawing without prejudice their motion for a stay of state court proceedings, subject to resubmission in the event that plaintiff's counsel attempts to resurrect its state court lawsuit.

Furthermore, this Court discussed with counsel the best methods of advancing this case in an expeditious fashion. It was agreed that, insofar as plaintiff still has pending demands for injunctive and declaratory relief and punitive damages, the moving defendants would file subsequent summary judgment motions addressed to these demands.[4] This Court established a scheduling

order pertaining to the anticipated motions. Consequently, the moving defendants consented to withdrawing without prejudice their motions for entry of final judgment or, in the alternative, entry of partial judgment, pending this Court's determination of the present summary judgment motions.

By a Decision and Order entered on March 15, 1994, 154 F.R.D. 47, and a supplemental Order filed on April 1, 1993, this Court denied plaintiff's motion to certify the May 4, 1993 Decision and Order to the Court of Appeals. To the extent that plaintiff seeks reconsideration of that denial in connection with the present motions, plaintiff's request is denied.

## *FACTS*

The undisputed material facts have not changed since this Court filed its Decision and Order of May 4, 1993. This Court will assume familiarity with the facts recited in that Decision and will not repeat them here *in toto*. For the purposes of the present motion, this Court reemphasizes that GM has not manufactured or distributed any heavy duty trucks since December 16, 1988 (*see, e.g.*, Sergo Affid. ¶¶ 15–18), and its heavy duty truck manufacturing facilities have been closed. White ceased operations as a manufacturer and distributor of heavy duty trucks on December 31, 1987. Plaintiff ceased all operations in March 1990 (*see, e.g.*, Schule Dep., pp. 1025–32.) Furthermore, Buffalo Truck, which obtained the local VGM heavy duty truck franchise in 1987, no longer possesses a VGM franchise and has ceased doing

---

**4.** At page 3 of its Memorandum, plaintiff states that at the February 2, 1994 hearing this Court expressed an inability to enter final judgment pursuant to Fed.R.Civ.P. 58. This is not the case. Furthermore, plaintiff states that this Court directed the moving defendants "to apply for partial judgment under Rule 54(b), directing damage summary judgment against plaintiff on behalf of all defendants, including those who failed to move for it and *who failed* to serve any damage interrogatory, and granting defendants dismissal of all pending claims for injunctive or declaratory relief and punitive damages." (P. Memo, p. 3) (emphasis in original.) This is equally inaccurate. At the February 2, 1994 hearing, it was agreed that, insofar as this Court's Decision and Order of May 3, 1993 did

not address plaintiff's demands for injunctive and declaratory relief and punitive damages, the most expeditious method of proceeding in this case would be for the moving defendants to submit further summary judgment motions addressed to these demands. This Court expressed the belief, which was shared by defense counsel, that if these motions were granted, partial final judgment could properly be entered as to the moving defendants, pursuant to Fed.R.Civ.P. 54(b), because plaintiff would not be entitled to any relief. This Court never suggested that the moving defendants should seek entry of summary judgment in favor of any other defendants. Such a practice would not be appropriate under Fed. R.Civ.P. 56.

business. (Gambino Affid. ¶¶ 14–32; Schule Affid. ¶¶ 29–47.)

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Under the Rule, a party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact, or by pointing out to the court that there is an absence of evidence supporting one or more essential elements of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Furthermore, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant*, 923 F.2d at 982. The function of the court is not "to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. However, a summary judgment motion will not be defeated merely on the basis of a "metaphysical doubt" about the facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), "or on the basis of conjecture or surmise," *Bryant*, 923 F.2d at 982. In other words, the nonmoving party must come forward with significant probative evidence in support of its complaint. *See Capital Imaging v. Mohawk Valley Medical Ass'n*, 996 F.2d 537, 542 (2d Cir.1993).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *id.* at 541, and "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553.

### Plaintiff's Demands for Injunctive Relief

In its Complaint, plaintiff makes the following demands for injunctive relief:

82. Plaintiff is entitled to judgment restraining and enjoining defendants and each of them during the pendency of this action and permanently, from entering into a Class 8 truck franchise or any other dealership or sales arrangement for the sale or servicing of, and from selling or servicing any trucks or parts manufactured by GMC, any of its subsidiaries, affiliates or joint venturers in the Western New York market with any person, firm or corporation other than plaintiff.

83. Plaintiff is entitled to judgment restraining and enjoining defendants and each of them during the pendency of this action and permanently, from interfering with, cancelling or inducing the cancellation of, terminating, suspending, and refusing to renew any of plaintiff's Class 8 truck franchise agreements or franchise rights except in good faith and for due cause.

84. Plaintiff is entitled to judgment restraining and enjoining defendants and

each of them during the pendency of this action and permanently, from entering into any franchise, agreement or arrangement for the sales of Class 8 trucks and related parts and the servicing of same in the Western New York market on terms and conditions more favorable than those offered, and available to, plaintiff.

. . . .

... 86. As a result of the foregoing, plaintiff is entitled to judgment restraining and enjoining defendants during the pendency of this action and permanently, from taking any steps to implement such decision of the Committee and entering into any franchise, agreement or arrangement with Buffalo Truck for the sales or servicing through Buffalo Truck, of any Class 8 truck and related products in the Western New York market.

(Complaint, ¶¶ 82, 83, 84 and 86.)

■ The provision and scope of injunctive relief is left to the discretion of the court, and depends upon a balancing of the equities and hardships involved in the litigation. *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). *See also Quinn v. Aetna Life & Cas.*, 482 F.Supp. 22, 28 (E.D.N.Y.1979), *aff'd*, 616 F.2d 38 (2d Cir.1980). "Generally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1367 (2d Cir.1989) (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975)), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

■ Moreover, a permanent injunction is a proper remedy only where it will eliminate existing or presently threatened injuries. *Socialist Workers Party v. Attorney General of the United States*, 642 F.Supp. 1357, 1425 (S.D.N.Y.1986) (citing *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931)).

Past injury may have a bearing upon whether an injunction should be granted, but only as to the likelihood that the past misconduct will be repeated. To obtain injunctive relief based on past injury the plaintiff must show a real and immediate threat that the injury will be continued or repeated. *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 676, 78 [38] L.Ed.2d 674 (1974) [sic]. Judicial intervention to prevent injury from misconduct is not justified when such misconduct is merely hypothetical. *Halkin v. Helms*, 690 F.2d 977, 1005 (D.C.Cir.1982).

*Socialist Workers*, 642 F.Supp. at 1425.

Defendants cite the case of *Martschinske v. Olympic Styles, Inc.*, 628 F.Supp. 231 (D.S.D.1984), *aff'd*, 774 F.2d 1172 (8th Cir. 1985). In *Martschinske*, the plaintiff and the defendant entered into a franchise agreement involving a certain type of automotive equipment. Defendant terminated the franchise, based upon purported breaches of the franchise agreement. Plaintiff sued defendant, alleging fraud, tortious breach of an implied obligation of good faith, and violations of the South Dakota Franchise Act, SDCL 37-5A-1, *et seq.* Plaintiff sought rescission of the franchise. Defendants counterclaimed for breach of contract, and demanded an injunction prohibiting plaintiff from further producing the franchised product. By the time of trial, however, defendants' business was no longer in operation. Furthermore, although plaintiff continued to produce the product during the time of trial, the court was "given to understand" that the plaintiff had permanently ceased production. *Id.* at 243. Therefore, the court considered defendants' demand for injunctive relief to be moot, and defendants' request was denied. *Id.* [5]

Defendants also rely on *USAchem, Inc. v. Goldstein*, 512 F.2d 163 (2d Cir.1975). In that case, defendant entered into an agreement with plaintiff's predecessor corporation, pursuant to which defendant was engaged as a salesman for plaintiff's products. The agreement provided that during the term of defendant's employment and for 18 months after its termination for any reason, defendant would not sell competing products in the

---

**5.** Defendant GM incorrectly indicates in its Memorandum that the *plaintiff* in *Martschinske* had sought the injunctive relief. (GM Memo, p. 5.)

sales area or divert plaintiff's customers in the sales area. Defendant terminated the agreement, established his own business, and made sales of competing products within the sales area. Plaintiff brought suit, alleging, *inter alia,* breach of the restrictive covenant contained in the agreement. Plaintiff sought compensatory damages, and a preliminary and permanent injunction prohibiting defendant from competing with plaintiff for an 18 month period after the date of the court's final order. The court held that, notwithstanding any breach of the restrictive covenant, the passage of time and intervening circumstances rendered injunctive relief impracticable. The court wrote, "As we have indicated, such an injunction could only be granted with respect to Goldstein's solicitation of former customers of Chem. That solicitation commenced more than two years ago; whatever special influence Goldstein was able to bring to bear on former clients has long since been exercised...." *Id.* at 169.

■ In the present case, plaintiff has entirely ceased its business operations. GM no longer manufactures or distributes heavy duty trucks, and its heavy duty truck manufacturing facilities have been closed. White has also ceased operations as a manufacturer and distributor of heavy duty trucks. Buffalo Truck, which obtained the local VGM heavy duty truck franchise in 1987, no longer possesses a VGM franchise and has ceased doing business.

In light of these circumstances, it is far too late to enjoin GM from terminating plaintiff's heavy duty addendum: the practicability of that relief ceased when Judge Elfvin denied plaintiff's motion for a preliminary injunction in January 1988. Furthermore, this Court could not enjoin defendants from offering a heavy duty truck franchise to other dealers: all of the moving defendants except VGM [6]

are either defunct or out of the heavy duty truck business, and there is no indication that the injury feared is even a remote possibility. Furthermore, this Court noted in its May 4, 1993 Decision and Order that plaintiff is not entitled to a franchise agreement with VGM.

Most importantly, it would make no sense to grant the requested injunctive relief because plaintiff itself has gone out of business, allegedly due to defendants' actions. It would be an improper use of this Court's equitable powers to require GM to resume its heavy duty truck operations, re-open its facilities, and award a new franchise to plaintiff. It would be equally improper to require VGM to cancel any existing franchises and provide a franchise to plaintiff. These measures would be impossible, because plaintiff no longer exists as an operating entity.

For these reasons, this Court finds that plaintiff is not entitled to injunctive relief on any of its causes of action that survived defendants' previous motions for summary judgment. Furthermore, plaintiff has failed to specify any facts in the record supporting its demand for injunctive relief; nor has plaintiff cited a single case pertaining to this issue. Therefore, summary judgment will now be awarded to the moving defendants on plaintiff's demand for injunctive relief.

*Plaintiff's Demands for Declaratory Relief*

In its complaint, plaintiff makes the following demands for declaratory relief:

80. By reason of the foregoing, plaintiff is entitled to judgment declaring the purported termination of its GMC Class 8 truck franchise null and void and of no force and effect whatsoever and to judgment declaring that such Class 8 truck franchise remains in full force and effect and is binding upon the parties.

85. Plaintiff is entitled to judgment declaring that the decision of the Committee,

---

6. This Court notes that at paragraph 84 of its Complaint, plaintiff seeks to enjoin defendants, including VGM, from "entering into any franchise, agreement or arrangement for the sales of Class 8 trucks and related parts and the servicing of same in the Western New York market on terms and conditions more favorable than those offered." This demand apparently relates to plaintiff's claim under N.Y.Vch. & Traf.Law

§ 463 stemming from the extension of CE discounts on Brigadier trucks sold to Ryder in 1987. The merits of this claim survived defendants' previous motions for summary judgment (*see* May 4, 1993 Decision and Order, pp. 28–31). Although VGM apparently has not withdrawn from the heavy duty truck business, the injunctive relief sought could not be obtained against VGM for the reasons previously set forth.

in combination with the other defendants, to terminate all of plaintiff's GMC Class 8 truck franchise rights and transfer them, together with the Volvo–White Class 8 truck rights, through the medium of the Volvo GM joint venture, was arbitrary and capricious, was unsupported by any objective criteria or evaluation and was taken in bad faith and without cause.

(Complaint, ¶¶ 80, 85.)

The decision whether to award declaratory relief is committed to the sound discretion of the district court, and is not a matter of right of the litigants. *Zemel v. Rusk*, 381 U.S. 1, 19, 85 S.Ct. 1271, 1282, 14 L.Ed.2d 179, *reh'g denied*, 382 U.S. 873, 86 S.Ct. 17, 15 L.Ed.2d 114 (1965); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993). The district court must entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir.1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969), *cert. denied*, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970)).

"The 'test' that is generally applied to determine whether declaratory relief should be granted is 'whether it is relatively certain that coercive litigation will eventually ensue between the same parties if a declaration is refused.'" *Marvel Comics Ltd. v. Defiant*, 837 F.Supp. 546, 550 (S.D.N.Y.1993) (quoting *Carmichael v. Mills Music, Inc.*, 121 F.Supp. 43, 45 (S.D.N.Y.1954)). It has also been noted that "where the complained of conduct has ceased, declaratory relief survives a mootness challenge only insofar as it seeks to declare a set of legal relations which attributes legal liability for damages to the party against whom the relief is sought." *Lane v. Reid*, 559 F.Supp. 1047, 1052 (S.D.N.Y.1983).

These principles were explained and further expounded in *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811 (2d Cir.1975), where holders of debentures issued by a corporation sued the corporation under section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a), and accompanying securities regulations. The corporation had decided to raise working capital by selling some of its computer equipment—a measure that required approval by a certain class of bondholders. The corporation secured the necessary votes by reducing the price at which the bonds could be converted to shares of stock, thereby increasing the value of the bondholders' rights. The plaintiffs, a minority group of bondholders, objected on the ground that the conversion price offered by the corporation was not low enough. When they were unsuccessful in blocking the sale of equipment, they sued the corporation, alleging fraudulent solicitation of proxies. The plaintiffs sought a declaratory judgment that the annual meeting at which the equipment sale was approved had been conducted illegally as a result of fraudulently obtained proxies. The district court held that the plaintiffs' request for declaratory relief had been mooted by the events of a subsequent shareholder meeting, and dismissed the plaintiffs' claims under § 14(a). The district court believed that any declaratory judgment "would be an empty exercise resulting, at most, in a judicial declaration of no practical import." *Id.* at 814.

The Second Circuit upheld the district court, reasoning that a declaratory judgment would have no practical effect because the computer equipment sale had already been completed. The court wrote:

> ... [P]laintiff bondholders seek to justify claims one and two as enforcement of § 14(a). The obvious problem with this rationale is that plaintiffs, if successful, would not enforce anything. Unlike damages and injunctive relief, which apply significant sanctions and thereby deter future conduct, a declaratory judgment has no practical effect except as it lays the basis for future relief of a more coercive nature. Plaintiffs' claims ... if successful, would not change anyone's behavior. How this would "enforce" the policies of § 14(a) is a mystery we cannot fathom. No one's behavior will be affected (or enforced) by a mere declaratory judgment under the circumstances here.
>
> ....

... There may (arguably) be cases when declaratory judgment, by itself, will have an enforcement effect upon future behavior. When the behavior complained of is of such a nature that it might predictably be repeated again ... a prior declaratory judgment may serve the useful purpose of facilitating an injunction at a future date. However, that is not the situation here....

*Id.* The court proceeded to discuss the inappropriateness of declaratory relief in a passage that is quite apropos to the present case:

There are few principles as firmly and as deeply embedded in our jurisprudence as the proposition that federal courts will not issue opinions unless a valid and continuing controversy exists between the litigants. *See, e.g., North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). When, as here, an issue is rendered moot by plaintiffs' failure to specify monetary damages or other operative relief, and the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.

*Id.* at 817.

■ In the present case, this Court determined in its Decision and Order of May 4, 1993 that plaintiff had adduced facts upon which a reasonable jury could find that various defendants were liable on a number of plaintiff's causes of action. Nevertheless, even if plaintiff were to prevail on those causes of action, a declaratory judgment to that effect would have no practical effect under the present circumstances. Such a judgment would not foreseeably change the behavior of any party, especially plaintiff, which is no longer in operation. Furthermore, there is no indication that, if a declaratory judgment is foreclosed, further coercive litigation will ensue due to a repetition of the behavior complained of. No party is in a position to repeat such behavior.

Moreover, plaintiff has failed to specify any facts in the record supporting its demand for declaratory relief; nor has plaintiff cited a single case pertaining to this issue.

For these reasons, summary judgment must be awarded to the moving defendants on plaintiff's demand for declaratory relief.

*Plaintiff's Demand for Punitive Damages*

■ "In order to justify an award of punitive damages there must be a showing of actual injury which would justify an award of actual or compensatory damages. *See Gill v. Montgomery Ward & Co.,* 284 A.D. 36, 41, 129 N.Y.S.2d 288, 295 (3rd Dept., 1954)." *Ebker v. Tan Jay Int'l Ltd.,* 741 F.Supp. 448, 472 (S.D.N.Y.1990), *aff'd,* 930 F.2d 909 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 161, 116 L.Ed.2d 126 *reh'g denied,* —— U.S. ——, 112 S.Ct. 625, 116 L.Ed.2d 646 (1991). Here, plaintiff failed to establish its actual or compensatory damages in response to defendants' previous motions for summary judgment. Therefore, punitive damages are now unavailable to plaintiff.

■ Furthermore, no punitive damages are available in connection with plaintiff's causes of action for breach of contract. *See, e.g., Thyssen, Inc. v. S.S. Fortune Star,* 777 F.2d 57, 63 (2d Cir.1985); *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.S.2d 354,.358, 386 N.Y.S.2d 831, 833, 353 N.E.2d 793, 795 (1976).

■ Finally, with respect to the other causes of action that survived defendants' previous motions for summary judgment on the issue of liability, punitive damages are recoverable, if at all, only for "gross, wanton, or willful fraud or other morally culpable conduct." *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 509 (2d Cir.1991) (quoting *Borkowski v. Borkowski,* 39 N.Y.S.2d 982, 982, 387 N.Y.S.2d 233, 233, 355 N.E.2d 287, 287 (1976) (mem.)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992); *See also Kristal Dodge Corp. v. Chrysler Motors Corp.,* 183 A.D.2d 814, 584 N.Y.S.2d 580 (2d Dept.1992). As discussed in this Court's Decision and Order of May 4, 1993, the facts of this case provide no indication of such conduct. In addition, plaintiff has utterly failed to respond to defendants' summary judgment motions by referring to any facts in the record evincing fraud or other morally culpable conduct. Therefore, defendants' motions for summary judgment on plaintiff's demand for punitive damages will be granted.

## CONCLUSION

By this Court's Decision and Order filed on May 4, 1993, the moving defendants were granted summary judgment on plaintiff's demand for damages due to plaintiff's failure to respond to their summary judgment motions with sufficient proof of its alleged damages. When counsel for the parties appeared before this Court on February 2, 1994, it was agreed that, in order to advance this case efficiently, defendants would submit summary judgment motions addressing plaintiff's remaining demands for injunctive and declaratory relief and punitive damages. This Court advised plaintiff's counsel at that time that, if appropriate, this Court would entertain motions for sanctions and costs resulting from plaintiff's insistence on pursuing its case against defendants solely on the basis of these demands. (Transcript of proceedings held on February 2, 1994, pp. 41–42.) Furthermore, in Decisions filed on March 15 and April 1, 1994, this Court addressed at length the standards by which any subsequent motions for summary judgment would be considered and resolved.

Plaintiff has not sustained its burden under those standards. It has, once again, failed to respond to defendants' properly supported motions for summary judgment with references to facts in the record indicating its entitlement to injunctive and declaratory relief and punitive damages. Plaintiff's responsive papers consist of conclusory declarations about the purported merits of plaintiff's claims, mixed with further objections to this Court's Decision and Order of May 4, 1993. Astonishingly, plaintiff does not cite a single citation to authority in support of its remaining demands for relief. As such, plaintiff's papers are insufficient to withstand defendants' motions according to Fed.R.Civ.P. 56, and defendants' motions for summary judgment will be granted on plaintiff's demands for injunctive and declaratory relief and punitive damages. As a result, all of the relief demanded by plaintiff will be foreclosed as a matter of law as against the moving defendants.

This Court finds that there is no just reason for delaying the entry of final judgment in favor of the moving defendants. Similarly, this Court finds that there is no just reason for delaying the entry of final judgment in favor of the individual defendants Berggren, Kaczmarek, and Gurley, whose motions to dismiss plaintiff's complaint due to lack of personal jurisdiction were granted by this Court's Decision and Order of May 4, 1993. Therefore, final judgment will be entered as to these defendants on each of plaintiff's causes of action, pursuant to Fed.R.Civ.P. 54(b).

## ORDER

IT HEREBY IS ORDERED that the motions of defendants General Motors Corporation, Volvo White Truck Corporation, and Volvo GM Heavy Truck Corporation for summary judgment on plaintiff's demands for injunctive and declaratory relief and punitive damages are GRANTED, pursuant to Fed. R.Civ.P. 56.

FURTHER, that the Clerk of the Court is directed to enter final judgment in favor of defendants General Motors Corporation, Volvo White Truck Corporation, Volvo GM Heavy Truck Corporation, Berggren, Kaczmarek, and Gurley, and against plaintiff, pursuant to Fed.R.Civ.P. 54(b).

SO ORDERED.